Good morning, Your Honor. Alan Nader, First Century Insurance. When you buy products liability coverage, you get coverage for claims that arise under products liability law generally. However, if you decide not to buy that coverage, then you don't have that coverage, and that's what happened here. The insured, MFM, decided, although they bought products liability coverage in the past or the prior policies, that they were not going to buy it this time, and they saved something along the lines of about $10,000. The rider, if I can call it that, or the extended coverage that you've just described, the products liability coverage, for lack of a better description, that was available for a $10,000 extra premium, if that were in place, would it have covered this loss? Oh, absolutely. Absolutely. And when did the manufacturer decide not to continue that coverage? When in time? I believe our policy, this policy was the 2000-2001 policy. I think they had the coverage in the prior year, although I'm not entirely sure. They certainly had it in the earlier policies in the late 90s. In any event, it was not in place at the time of the incident in which the fire occurred. Correct. And that's the problem here. The case law, I think, does provide guidance to understand what is the scope of this products liability coverage. What you do often in other insurance law cases, you look to the law, in this case California law, of what is the scope of products liability to determine what the risk that would have been covered. Just like if you provide coverage for defamation, you look at the law of what defamation is, or you look for when you provide coverage for invasion of privacy, so on and so on. Here, the judge, the trial judge started to look at products liability law, but then the only principle of products liability law that he cited was that a defendant or a manufacturer or seller is not liable if their product is modified, if you don't know of the modification. And that was the judge didn't look at products liability law beyond that. And in our view, the judge took way too narrow an approach. Kennedy also, in effect, find that this was not their product? That was his focus, correct, because it had been modified. Do we owe him some deference on that finding? No. This is the summary judgment, and this is a legal issue that's considered de novo. De novo. Yes, de novo. Let me ask a couple of procedural questions just to clear a couple of things up in my mind. First of all, when was the trial to deck action? Yes. And when was that filed in relation to the trial that occurred that resulted in the damage? It was just before the decision in the trial. It was right about the time of the trial, and I believe just prior to the decision. There was a point in time when the defense was tendered to Sentry? Yes. And it looked at it for a period of time and then decided that it did not owe a defense or coverage? That's correct. It had actually an initially assigned counsel. Why wasn't the deck action filed then? Well, often, deck actions are not the norm. Normally, a carrier can simply disclaim coverage. They don't file a declaratory relief action. That's an obligation that a carrier, every time it does that. I'm not suggesting that there was any obligation. I'm just suggesting why, when the decision was reached not to provide a defense even under a reservation of right, or to acknowledge coverage, why wasn't the deck action filed right then? I think it seemed clear to the carrier that it wasn't particularly, in their minds at that point, it wasn't a particularly close question where you needed to go to the court to get the answer. But then it ultimately saw what was happening. The carrier felt like they were getting set up. And we did go and file this deck action at that time. But I think it was those events which triggered the decision to file the deck action. You were and Sentry was invited to participate in the trial, the procedure that resulted in the verdict? Well, only if Sentry had undertook the defense. They couldn't. I mean, not in any other way, no. And Sentry is not a party to it. Sentry would have had to have been defending. But it was invited to participate and decided not to. It could have defended, yes. And it had originally defended. Okay. But in looking at the coverage issue, the products liability law generally includes, of course, the failure to warn. It includes claims for negligence. And it includes failure to warn against a known modification of one's product. Here, the insured sold the product. It was a spinning machine. It was then modified. And during the modification process, the customer came back to MFM, the insured, for advice, because they were having trouble with the modification. And the insured gave that advice. Apparently. But the decision in the underlying case is that the advice was faulty and incomplete because the insured didn't warn against the risks of fire. And that's the basis for this $3 million semi-judgment against the insured. In our view, that falls well within the realm of products law, because that law is broad enough to cover situations where if you sell a product, you know it's being modified. In this case, you participate in the modification. You still have a duty to warn against risks. And apparently, the finding was they didn't warn against this risk of fire with the modification as it was proceeding. So that would have been covered under the products coverage. It's not covered under the other coverage, which is a premises liability coverage. There's also an advertising injury coverage, but that's not covered. Tell me if your position is any more complicated than this. The manufacturer had this coverage in the past. It would have provided coverage for these events. It elected for economic or other business reasons not to have the coverage. The policy that was in place, the CGL policy in place at the time of these events did not cover this type of a claim, and therefore, it shouldn't be on the hook. Correct. Is it any more complicated than that? No, not at all. Why don't you sit down, and let's hear from American. Before you sit down, I want to ask one question. Sure. There was a fire. Was the fire caused solely by the modification, or was it caused by the use of the initial product and the modification? The initial product and the modification. The danger, the insurance held a spinning machine, and it spun, and it was the spinning that disconnected the hoses that caused the oil to spurt upwards and cause the fire. So the machine was in use. The spinning machine. The product was in use, and the modification, so it worked together to cause that fire. Well, that's right. Okay. That's all I wanted to know. I wanted to clear that up. Okay. We'll hear from American at this time. Counsel? Good morning, Your Honor. Your Honor, this notion that MFM decided not to buy insurance coverage that would include coverage for this incident is belied by the terms of the policy that Century decided to sell it, and the premium Century decided to charge. The insuring agreement, the first part of the policy, says we will pay those sums that the insured becomes legally obligated to pay as damages because of property damage, and that is subject only to this PDES COH exclusion. And that exclusion says that the only exclusion that is material here is for property damage arising out of MFM's product. Well, it wasn't just MFM's product. The last question I asked, the product plus a known modification, how do you get around that? No, Your Honor. This product had been modified to the extent that it now contained what's called a hydraulic chuck. I understand that. As the district court found, and two experts, which the district court allowed to give evidence on, this was not the same product at all that MFM sold to Samtech. And very importantly, the state court trial judge specifically found that the deficiencies in this unit that caused the fire were only deficiencies or defect in this hydraulic chuck. What about the, you know, the warning part, the failure to warn? I'm glad you asked, Your Honor, because I think that that is an extremely important point. In the state court liability trial, MFM's only liability was found to be giving negligent advice, failing to warn Samtech, the purchaser of the machine, about dangers that would arise from using the hydraulic chuck without certain safety devices that would have prevented the fire. Is it fair to say that if MFM had never been contacted and had no knowledge that the machine that sold the end user had, in fact, been modified, that we wouldn't be here today? Correct, because the only liability... The hook for liability is the allegation, the fact that cited the state court decision that there was a failure to warn. About the hydraulic chuck dangers. And it was only the dangers in the hydraulic chuck that was the only cause of the fire. The MFM machine could not have ever caused this fire because it had an air chuck and air would not have... Where do we get coverage for failure to warn? Because the insuring agreement, once again, insures for all sums that MFM becomes legally obligated to pay. So when it was decided that... Isn't that limited to the premises? No, Your Honor. I say this is a very broad insuring agreement for property damage, subject only to certain exclusions. And again, Century decided to write this product hazard exclusion the way it wrote it, and every exclusion is tied into your product. And Century, at this point, cannot dispute the district court's finding that this unit that started the machine was not an MFM's product. Let me ask this question. Go ahead. Let's assume that the company, or this MFM, whatever it is, the company making the product didn't know about the modification. Would this not be true if it had products liability, and suppose there had been a fire or some other damage, that if it had a products liability policy and there had been a fire, it would cover it? And would that be a fair statement? If it had not known about the modification, once again, I don't believe that they would have been sued because the reason they were sued... Well, I'm not talking about sued. I'm talking about coverage for the fire that occurred as a result of the product. Again, Your Honor, I think you'd have to look at, of course, in terms of the policy, what is the product that is giving rise to liability? In this case, in the end, the product that started the fire was not MFM's product. And nothing about the way MFM manufactured or designed its machine was said to have caused the fire. But the products completed exclusion defines products as including, quote, the failure to provide warnings. Now, why doesn't it come within that exclusion? And as the district court found as a matter of contract interpretation, it makes no sense to the first clause of that exclusion. It says your product includes warranties or representations about your product and failing to provide warnings, instructions. And as the district court, and I believe properly, said, that assumes the word about your product or this clause would not make sense. So the question is, well, one of the questions then is whether or not the district court correctly defined what product means in the exclusion, right? Right. I think the crux of this case, Your Honor, I don't think we have to go any further than the undisputed facts about actually what is the machine that caused the fire and the plain wording of the policy. Isn't there a California case law that says, you know, a manufacturer's product includes not only the product as manufactured, but the product is modified if it's a known modification? Those were the failure to, I don't think that that is the way that the cases come down, Your Honor. And I think that that is where all those century claims that now let's not look at the policy language, let's look at product liability law. First of all, as we indicated in our brief, I think that that theory now is waived on appeal. Even though the district court asked for supplemental briefings specifically on what is the product here, at no point below was this product liability theory ever raised. But I don't think it's helpful in identifying the product. But if you do look at all of the cases that are cited by Century, there's two common things. All of the cases, there's one or two things that are happening. The product that gives rise to liability is the insured's actual product, or the insured negligently failed to give a warning about its product. And I think one good example, you know, all the cases fall into that, but I think one really good example is the Inducta Therm versus New Jersey manufacturers. And in that case, the insured was found negligent for recommending that a certain tool, it was a shank, be used with certain ceramic crucibles that it supplied to the purchaser. It also leased an industrial melting unit. And the court specifically looked at the crucibles that were supplied and the melting unit that was leased, and the court first said lease products and supply products both fall within that policy's definition of your product. So that was the first step. And then the court went on to say that the negligent advice concerning the crucibles fell squarely within that the negligence of the insured was centered on how it told the purchaser to use the crucibles. So that squarely fell within giving advice about your product. Suppose the ñ this is hypothetical, obviously. Just remove the modification from the facts. But fire could not have been started. No, no. Let's just assume hypothetically that MFN sells the machine to the user, and the user decides it wants to operate it at a higher temperature or at higher RPMs or different kinds of metals being melted. And they contact MFN, and MFN fails to warn that these additional uses of the machine, not modified in any way, and that causes the fire. Is there coverage? Under product liability law, there would be liability. Under this policy. That would be your product, so I would say no. That would fall under the definition. So it's ñ so it's ñ there is ñ there's not ñ in your view, there's not coverage if the product is not modified, but there is if it is. Well, Your Honor, I just said ñ Can I have a yes or no to that? Pardon me? Can I have a yes or no? Is your position that if the product had not been modified and there had been a fire based on a failure to warn, no coverage? That's your position? Because it would be your product. Okay. But if there is modification, failure to warn, there is coverage. Well, again, it's what is your product. So here, yes, it's not our product. There's coverage. If we're going to be searching for a product liability doctrine here, though, Your Honor, and I don't think it's necessary. Again, I think we look to the undisputed facts and the language of the policy. But I think that the final products doctrine is actually a good fit for looking at what is your product, and that doctrine was recognized by this Court in Goodyear and that doctrine says when a manufacturer such as MFM supplies a component part, which is eventually integrated into a larger or different machine, and there is, let's say there's some defect in the component part or the original product. For purposes of this product liability doctrine, if the whole unit is damaged, there is still coverage because it's the units that is damaged and it is not the product of the insured. Here, at the most, I think that MFM's machine would be a component part of what was a larger winter camp hydraulic chuck spinning machine, and once again, that was found by the district court and the experts to be, not to be, MFM's product. Okay. Your Honor, if I may have a moment to address the cross-appeal? Oh, sure. Go right ahead. As Your Honor knows, the district court found that Sam Tech wrongfully denied defense to MFM even after it became aware of facts that placed it on notice that this machine, MFM's machine, had been modified. The district court specifically found that that put it on notice of the possibility of coverage. So American and MFM are asking this Court to also find that Century breached its obligation to settle the state court liability action within policy limits by refusing to participate in the mediation that it was invited to. As I understand it, the reason Judge Wilson ruled for Century is because Century had no notice of the offer, right? That is correct. Now, what's wrong with that reasoning? Well, Your Honor, they had no notice of the settlement offer, but they had notice of and were specifically invited to attend the mediation. And I think that the district court's reasoning was incorrect under the state farm versus all state decision. And that case reflects that under California law, knowledge of a settlement offer is not a prerequisite to the imposition of damages beyond policy limits. In state farm, like here, the insured refused to defend, the insurer refused to defend its insured, and for that reason alone it did not know that a settlement offer had been extended. And the state farm court said that the failure to accept the settlement offer could well be found to be the foreseeable consequence of the refusal to defend. In other words, if the insurer had defended, it would have learned of the settlement demand, and it would have an opportunity to compromise the claim. Don't you have to have bad faith to get an award above the policy limits? Well, Your Honor. Yes or no? What do you say to that? It's implied here. Pardon? I said. Do you have to have, is there bad faith here? There is bad faith. Well, why is there bad faith when there's truly an uncertain question about coverage? And it seems to me that to get something more than the policy limits, you have to show that the insurer did something under the circumstances, which would be bad faith. Well, Your Honor, the California courts have always held that if the insurer wants to take the risk of saying there is no coverage and does not defend. So it's a matter of risk. If you want to take that position and you lose, you're stuck for whatever happens. Yes, but there is also a corresponding duty, and it's an implied duty to exercise good faith to reasonably pursue settlement and reasonably keep abreast of the progress of the case. So here we are saying that, as State Farm indicated, Century had a duty to keep abreast of what was going on and a duty to at least pursue or consider reasonable settlement. They sent an observer, an attorney, to this trial eventually, even though after being requested that they defend the trial, they said no. But they sent an observer to the trial. It would just be good, prudent business practice to send an observer to the mediation. Generally, I think we litigation attorneys know that the only thing that goes on at a mediation is that settlement positions and offers and counteroffers are discussed. Did you want to save any time for rebuttal on the cross-appeal? You don't have to, but if you do, you've got a little bit of time there on the clock. Well, that is our position. And unless Your Honors have any further questions on the cross-appeal. I don't see any. And you do have a little bit of time. If there are arguments about the cross-appeal from your opponent, you're entitled to come back up. Well, thank you, Your Honor. You bet. Thank you for coming in. Thank you. Just to respond to a few points, unless the Court has questions, counsel raised the Goodyear case. That case actually, in my view, supports Sentry because that's a situation where there was coverage found because the insured had products liability coverage. Those cases found coverage under that coverage and refused to apply an exclusion, which is a totally different exclusion that Sentry isn't relying on and never relied on. That's the damage to your product exclusion. So those cases, in effect, support Sentry, finding that since that damage to your product's exclusion doesn't apply, it is covered under the product's coverage, if I can – if that's clear from what I'm saying. In terms of the cross-appeal, there isn't even a cause of action for bad faith. There's a cause of action on the counterclaim for declaratory relief and breach of contract only. And there was also – that decision, by the way, was decided at a trial, which I would suggest the Court should give deference to the ruling of the trial court. There was no summary judgment in favor of the carrier on the issue of being liable beyond policy limits. That actually went to a trial, and the judge found properly that Sentry did not act in bad faith, had no notice of any policy limits demand, and therefore was not in a position to ever respond to any policy limits demand. And that was the basis at trial for the judge's decision. If there are – I'd be happy to respond to any further questions the Court may have. Roberts. I don't see any. Thank you, counsel. Do you have anything further on the cross-appeal? I know, Your Honor, it's a much good question. Okay. I don't see any. Thank you both for coming in and arguing today. It's a very interesting case. Appreciate it. The case just argued will be submitted for decision, and the Court will stand in recess for the day.
judges: Hawkins, Tashima, Bright